1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| WILLIAM KLAMUT,<br><br>                    Plaintiff,<br><br>        v.<br><br>CALIFORNIA HIGHWAY PATROL, et al.,<br><br>                    Defendants. | Case No.  15-cv-02132-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 19 |

**INTRODUCTION**

Plaintiff William Klamut ("Plaintiff") brings this 42 U.S.C. § 1983 case against Defendant California Highway Patrol ("CHP") and six CHP officers.  Pending before the Court is Defendants CHP Officers Nibecker and Wheeler's[1] Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Dkt. No. 19.  Plaintiff filed an Opposition (Dkt. No. 20), and Defendants filed a Reply (Dkt. No. 22).  The Court finds this matter suitable for disposition without oral argument and VACATES the January 7, 2016 hearing.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b).  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for the following reasons.

**BACKGROUND**

**A.      Factual Background**

On May 10, 2013, Plaintiff was driving north from Los Angeles on Highway 101, headed for Big Sur.  Am. Compl. ("AC") ¶ 10, Dkt. No. 10.  At the time, he had been suffering a psychotic episode secondary to sleep deprivation over a two-week period.  *Id.*

While driving, Plaintiff's car ran out of gas and hit a guardrail on the passenger side.  *Id.* ¶

---

[1] The parties do not provide the first names of the Officers.

United States District Court
Northern District of California

1    11.  A Cal Trans employee found the vehicle and attempted to contact Plaintiff inside his car, but

2    he was unresponsive.  *Id.*  Unnamed "Defendants" subsequently came to the scene and asked

3    Plaintiff to exit the vehicle.  *Id.*  "In his psychotic state," Plaintiff responded that he was an "alien"

4    and would not get out of the car.  *Id.*  Defendants "had fire fighting officials place wheel [chocks]

5    under the tires of the plaintiff's car to prevent it from leaving and or fleeing the scene."  *Id.* ¶ 12.

6         An unnamed Defendant contacted Plaintiff's younger brother, Paul, who in turn called

7    Plaintiff's mother (Judith), who is a pediatrician.  *Id.* ¶ 13.  Judith spoke to "the defendants,"

8    explained Plaintiff's "problem with sleep deprivation" and said he "suffered from mental illness."

9    *Id.*  Judith told them Plaintiff "was probably having a psychotic episode secondary to sleep

10   deprivation."  *Id.*  The "defendant officers" told Judith they were "going to use force to remove the

11   plaintiff out of the car if he did not cooperate."  *Id.* ¶ 14.

12        "At some point, the defendants broke the passenger-side front window and attempted to

13   drag" Plaintiff out of the car.  *Id.* ¶ 15.  By this time, Plaintiff was "suffering from delusions."  *Id.*

14   A "struggle ensued between the defendants and the plaintiff," at which point Defendant Officer

15   Nibecker "tased" Plaintiff in his right upper back, then tased Plaintiff "numerous times in various

16   parts of [his] body."  *Id.*  Unnamed Defendants subsequently "pulled" Plaintiff out of the car,

17   handcuffed him, and placed him in a patrol vehicle.  *Id.* ¶ 17.  While there, Plaintiff freed himself

18   from the handcuffs.  *Id.*  Unnamed Defendants attempted to pull Plaintiff out of the patrol vehicle

19   and ordered him to exit the vehicle.  *Id.*  After Plaintiff ignored these commands, Defendant

20   Wheeler tased Plaintiff again, and then Defendant Nibecker shot Plaintiff's right leg with "a less

21   lethal shotgun round."  *Id.* ¶ 18.  After feeling Plaintiff was still not in compliance, Defendant

22   Wheeler shot Plaintiff with five more rounds from the less lethal shotgun.  *Id.* ¶ 19.  Plaintiff

23   alleges he was struck multiple times with the shotgun on his right leg, his right hand, his upper

24   right arm, his abdomen, and his buttocks area.  *Id.* ¶ 20.

25        Paramedics came and transported Plaintiff to Natividad Medical Center in Salinas,

26   California.  *Id.* ¶ 22.  After being evaluated in the emergency room, Plaintiff alleges he was

27

28

admitted "under a 504[2] to the psychiatric hospital," where he remained until released to his parents on May 13, 2013.  *Id.* ¶ 22.

Plaintiff claims to have suffered physical injuries during his altercation with "the defendant officers," including multiple taser burns, a crushed right index finger, a right foot drop, bruises all over his body, and extensive subconjunctival hemorrhages.  *Id.* ¶ 23.  He is now seeing a psychiatrist for Post-Traumatic Stress Disorder, and the incident has affected his career in photography and design.  *Id.* ¶ 24.

**B.     Procedural Background**

On May 11, 2015, Plaintiff filed his original Complaint ("OC"), naming as Defendants the municipality of King City and "Officers Does 1 through 50" of the "King City Police Department."  Dkt. No. 1.  On August 10, 2015, the Court ordered Plaintiff to file a status report, as there was no indication the named Defendants had been served.  Dkt. No. 9.  Plaintiff's Status Report  advised that he intended to amend his pleading to name CHP officers and Monterey County Sheriff deputies in place of King City.  Dkt. No. 8.  The Court granted Plaintiff leave to file an amended complaint.  Dkt. No. 9.  Plaintiff filed his AC on August 20, 2015, for the first time naming CHP and CHP officers; Plaintiff dismissed King City at the same time.  Dkt. Nos. 10, 11.  Plaintiff served only Defendants Nibecker and Wheeler.  Dkt. No. 16.  They are sued in their individual capacities.  AC ¶¶ 4, 9.

Plaintiff asserts the Court has jurisdiction under 42 U.S.C. § 1983.  *Id.* ¶ 1.  He appears to bring one cause of action against "Defendant Officers" under two legal theories: (1) violation of the Fourth Amendment (excessive force), and (2) violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12201-12203 ("ADA") through "wrongful arrest" and /or failure to reasonably accommodate Plaintiff's mental disability.  *Id.* ¶¶ 26-38.  Plaintiff alleges his arrest was "wrongful" because Defendants knew, or should have known, he suffered from a "mental disability" because his mother had so informed the officers (*id.* ¶ 33), and the "nonresponsive conduct" which "prompted the defendants to remove the plaintiff from his car by force" was the

---

[2] This reference is not explained in the AC.

United States District Court
Northern District of California

result of his mental disability. *Id.* ¶ 34.  Plaintiff alleges Defendants also failed to reasonably accommodate his disability by having a mental health specialist come to the scene and "talk the plaintiff down" so he could be taken into custody more peaceably. *Id.* ¶ 37.

On November 9, 2015, Defendants filed their Motion to Dismiss, arguing: (1) Plaintiff's excessive force claim is untimely; (2) Title II of the ADA does not apply to individuals; (3) Plaintiff is not a "qualified individual with a disability" under the ADA; and (4) qualified immunity bars Plaintiff's ADA claims against the officers.

**LEGAL STANDARD**

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

United States District Court
Northern District of California

1    If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

2    request to amend the pleading was made, unless it determines that the pleading could not possibly

3    be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

4    banc) (internal quotations and citations omitted).  However, the Court may deny leave to amend

5    for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the

6    movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

7    to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."

8    *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v.*

9    *Davis*, 371 U.S. 178, 182 (1962)).

10                                       **DISCUSSION**

11   **A.       Excessive Force**

12   Plaintiff alleges "the defendants" violated his Fourth Amendment right to be free from the

13   use of excessive force "when based on actions stemming from the plaintiff's mental disability,

14   they failed to take steps to deescalate a [sic] an already tense situation that resulted in them tasing

15   the plaintiff numerous times and shooting him with a less lethal shotgun numerous times, causing

16   the plaintiff to suffer severe physical injuries as well as severe emotional distress." AC ¶ 26.  He

17   further alleges the severity of the crime did not warrant such force because "upon defendants

18   observing the plaintiff being non responsive in his stalled car, he had not committed any crime and

19   they had notice that the plaintiff was suffering from a psychotic break." *Id.* ¶ 27.  Plaintiff

20   contends he did not pose any threat to the safety of the defendants or to others, and he was not

21   actively resisting arrest or attempting to evade arrest by flight. *Id.* ¶¶ 28-29.

22   Defendants argue Plaintiff's excessive force claim is untimely because it accrued on May

23   10, 2013 (the date the force occurred), yet he did not file his OC until May 11, 2015, and he did

24   not name the CHP officers until he filed the AC on August 20, 2015. Mot. at 6.  In response,

25   Plaintiff concedes his claim accrued on May 10, 2013, but argues the statute of limitations was

26   tolled for at least two days because he was incarcerated in a mental facility from May 11 to May

27   13, 2013.  Opp'n at 4.  Plaintiff also notes May 10, 2015 was a Sunday, and he was therefore

28   permitted to file his OC the following day. *Id.* at 5.

United States District Court
Northern District of California

Section 1983 claims do not have their own statute of limitations but instead borrow the personal injury statute of limitations for the forum state, as well as the forum state's law with respect to tolling and relation back. *Butler v. Nat'l Cmty. Renaissance of Ca.*, 766 F.3d 1191, 1198 (9th Cir. 2014) (citing, among others, *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007) and *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985)). California's statute of limitations for personal injury actions is two years. Cal. Civ. Proc. Code § 335.1. The standard rule is that accrual occurs "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citations and internal quotation marks omitted).

There is no dispute Plaintiff's excessive force claim accrued May 10, 2013, the date the force occurred. As an initial matter, Plaintiff timely filed his OC because the statute of limitations period was Sunday May 10, 2015, and Plaintiff therefore had until Monday, May 11, 2015 to file the AC. *See* Fed. R. Civ. Pro. 6(1)(C) ("[I]f the last day [of a statute of limitations period] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."). However, the OC only named King City and its "Doe" officers as defendants. Plaintiff did not file any complaint against the CHP and its officers until the AC, filed August 20, 2015. The Court must therefore determine whether his claim against the CHP officers relates back to the OC against King City.

        1.    <u>Legal Standard for Relation Back</u>

Whether an amendment relates back in an action under 42 U.S.C. § 1983 requires a court to "consider both federal and state law and employ whichever affords the more permissive relation back standard." *Butler*, 766 F.3d at 1201 (internal quotation omitted).

California Code of Civil Procedure section 473(a)(1), which governs amendment of pleadings, does not expressly permit relation back of amendments. California courts have held that section 473(a)(1) "does not authorize the addition of a party for the first time whom the plaintiff failed to name in the first instance." *Kerr-McGee Chem. Corp. v. Superior Ct.*, 160 Cal. App. 3d 594, 598 (1984). However, "where an amendment does not add a 'new' defendant, but simply corrects a misnomer by which an 'old' defendant was sued, case law recognizes an

United States District Court
Northern District of California

6

United States District Court
Northern District of California

exception to the general rule of no relation back." *Hawkins v. Pac. Coast Bldg. Prods., Inc.*, 124 Cal. App. 4th 1497, 1503 (2004) (citations omitted).  Thus, section 474 of the California Code of Civil Procedure "allows DOE defendants to be added within three years of the filing date of the original complaint if: (1) the complaint states a cause of action against each DOE defendant; (2) the complaint alleges that the plaintiff is ignorant of the true name of each DOE defendant; (3) the plaintiff is actually ignorant of the true name at the time of filing; and (4) the plaintiff amends once the true name of the defendant is discovered." *Jones v. Cty. of Sacramento*, 2014 WL 2918850, at *3 (E.D. Cal. 2014) (citing *Fireman's Fund. Ins. Co. v. Sparks Const., Inc.*, 114 Cal. App. 4th 1135, 1143 (2004); *Lindley v. General Elec. Co.*, 780 F.2d 797, 799 (9th Cir. 1986)).

Rule 15 of the Federal Rules of Civil Procedure governs amendment of pleadings and requires that leave be freely and liberally given whenever justice requires.  Fed. R. Civ. P. 15; *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  Under Rule 15, "[a]n amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).  The requirements in (C)(i) and (ii) must have been fulfilled within 120 days after the original complaint is filed, as prescribed by Rule 4(m).  *Butler*, 766 F.3d at 1202 (citing *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (indicating standard is met when "'the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and . . . the original complaint [was] filed within the limitations period'")).

7

"Rule 15(c)(1) incorporates the relation back rules of the law of a state when that state's

law provides the applicable statute of limitations and is more lenient." *Butler*, 766 F.3d at 1200.

"As a result, if an amendment relates back under the state law that provides the applicable statute

of limitations, that amendment relates back under Rule 15(c) (1) even if the amendment would not

otherwise relate back under the federal rules." *Id.*

      2.    <u>Analysis</u>

Because Plaintiff named Doe Defendants in the OC, the Court finds California Code of

Civil Procedure section 474 is the applicable relation back rule. *McCloud v. Farrow*, 2014 WL

6390288, at *3 (E.D. Cal. Nov. 14, 2014) (applying section 474 in § 1983 case with CHP Doe

defendants). As to the first requirement of section 474, the OC specifically asserts the § 1983

claim against Does 1-50. OC ¶¶ 3, 16. The Court recognizes that Plaintiff alleged the Doe

officers were employed by King City. *See* OC ¶¶ 3, 5. However, on October 23, 2013—nearly

two years before he filed the OC—Plaintiff submitted a claim to the California Victim

Compensation and Government Claims Board against "King City Police" and "California

Highway Patrol." *See* Req. for Judicial Notice, Ex. 1 ("Claim"), Dkt. No. 29.[3] Further, Plaintiff

references the CHP in his OC. OC ¶ 11 ("At some point the California Highway Patrol took

over."). According to Plaintiff's counsel, it was not until after filing the OC that Plaintiff learned

King City and its police officers were not involved in the conduct that took place. Dkt. No. 8.

Plaintiff thereafter dismissed King City, and no defendants other than the CHP Defendants remain.

Dkt. Nos. 8, 11. While Plaintiff's OC is not a model of clarity in regards to the intended Doe

defendants, the statute should be "liberally construed." *See Dieckmann v. Superior Ct.*, 175 Cal.

App. 3d 345, 355 (1985).

Moreover, Defendants have not presented evidence Plaintiff knew the true names of each

of the individual officers at the time he filed his OC, and Plaintiff named the CHP and its officers

---

[3] The Court GRANTS Defendants' Request for Judicial Notice. *See* Fed. R. Evid. 201(b)(2); *Duke Energy Trading & Marketing, LLC v. Davis*, 267 F.3d 1042, 1048 n.3 (9th Cir. 2001); *Pinon-Gutierrez v. Ca. Highway Patrol*, 2015 WL 5173068, at *1 n.2 (E.D. Cal. Sept. 3, 2015) (taking judicial notice of a tort claim the plaintiff filed with the California Victim Compensation and Government Claims Board).

United States District Court
Northern District of California

a little more than three months after filing his OC, at the early stage in these proceedings. Defendants have not presented any evidence indicating Plaintiff unreasonably delayed naming the individual officers once their identities were determined.  Based on this record, the Court finds Plaintiff satisfies section 474's requirements.  Thus, "if Plaintiff's amendment relates back under California law, it will relate back pursuant to Rule 15(c) despite the fact a different outcome would result if based solely on the federal rules."  *McCloud*, 2014 WL 6390288, at *3.

Accordingly, Defendants' Motion to Dismiss the excessive force claim based on the statute of limitations is DENIED.

**B.      ADA**

Plaintiff alleges two theories of liability under the ADA: wrongful arrest and reasonable accommodation.  AC ¶¶ 32-38.  As to wrongful arrest, he alleges: (1) he was disabled at the time he was arrested by "the defendants"; (2) "the defendant" knew or should have known he was disabled due to mental illness because he was non responsive and his mother informed them that he suffered from mental illness; and (3) "the conduct for which the defendant was initially sought after by the defendants (which was him being non responsive in his stalled car due to his mental illness) was not illegal conduct and that his non-responsive conduct which prompted the defendants to remove the plaintiff from his car by force was the result of his mental disability." *Id.* ¶¶ 32-34.

As to reasonable accommodation, he alleges: (1) "the defendants" failed to reasonably accommodate his disability in the course of the investigation and arrest, causing Plaintiff to suffer "greater physical injuries in the process than other people arrested under identical circumstances who are not disabled"; (2) "the defendants" were on notice of Plaintiff's need for an accommodation based on his mental disability because his mother informed them he was suffering from a psychotic break; (3) at the time of Plaintiff's arrest, there existed "the reasonable accommodation of the defendants having a mental health specialist come to the scene and talk the plaintiff down so that he could be taken into custody without having to harm him"; and (4) this modification would not fundamentally alter "the defendants" ability to take Plaintiff into custody. *Id.* ¶¶ 35-38.

9

United States District Court
Northern District of California

Defendants argue Plaintiff's claim must be dismissed because the ADA does not apply to individual defendants. Mot. at 6. Defendants further argue Plaintiff is not a qualified person with a disability because a "psychotic episode secondary to sleep deprivation for a two-week period" does not qualify as a disability under the ADA. *Id.* at 7. Finally, Defendants argue they are entitled to qualified immunity. *Id.* Plaintiff does not address Defendants' arguments, but instead requests leave to amend to allege the ADA claim against Defendants in their official capacities. Opp'n at 6.

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability based on that disability. 42 U.S.C. § 12132; *Weinreich v. LA Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). To state a claim of disability discrimination under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Id.* at 978.

"Title II applies to arrests." *Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014).[4] In *Sheehan*, the Ninth Circuit recognized two types of ADA claims applicable to arrests: (1) wrongful arrest, "where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity," and (2) reasonable accommodation, where police "fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." 743 F.3d at 1232. As noted above, the FAC alleges both claims.

     1.    <u>Whether Plaintiff is Disabled under the ADA</u>

With respect to the first element, the ADA defines "disability" as:

    (A) a physical or mental impairment that substantially limits one or

---

[4] The Court notes that the U.S. Supreme Court has yet to rule on this question. *See City & Cty. of S.F. v. Sheehan*, 135 S.Ct. 1765, 1772-74 (2015).

more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(1).  The phrase "physical or mental impairment" means, inter alia, "any mental or psychological disorder" including "emotional or mental illness."  28 C.F.R. § 35.104.  The phrase "a record of such an impairment" means, inter alia, having a "history of . . . mental or physical impairment that substantially limits one or more major life activities."  *Id.*

Under subparagraph (A), Plaintiff must demonstrate he has "a physical or mental impairment" that "substantially limits one or more . . . major life activities," and "[t]o survive a motion to dismiss [an] ADA claim," the plaintiff "must state facts to show that a claim to relief is plausible on its face."  *Kittleson v. Sears, Roebuck & Co.*, 2010 WL 2485935, at *3 (D. Haw. June 15, 2010).  "[V]ague and conclusory allegations" that the ADA's statutory requirements are satisfied "are insufficient to survive a motion to dismiss."  *Ovitsky v. Oregon*, 2013 WL 4505832, at *3-4 (D. Or. Aug. 20, 2013).  Other district courts in this Circuit have dismissed ADA claims for failing to allege with the requisite factual particularity that the elements of the ADA are met, including that the plaintiff is disabled within the meaning of the statute.  *See Longariello v. Gompers Rehab. Ctr.*, 2010 WL 94113, at *3 (D. Ariz. Jan. 5, 2010) ("Merely labeling himself as 'disabled' in the Complaint is insufficient to explain what physical or mental disability [the plaintiff] has."); *Kaur v. City of Lodi*, 2014 WL 3889976, at *4-5 (E.D. Cal. Aug. 7, 2014) (finding that "conclusory allegations are insufficient under the applicable pleading standard to allege facts from which a reasonable inference may be drawn that Parminder suffered from a disability defined in the ADA."); *Lambdin v. Marriott Resorts Hosp. Corp.*, 2015 WL 263569, at *2 (D. Haw. Jan. 21, 2015) ("It is not enough for Lambdin to state, in conclusory fashion, that he has a disability.  Having been injured or living with an impairment does not necessarily guarantee that one is protected by the ADA." (citing *Sanders v. Arenson Prods., Inc.*, 91 F.3d 1351, 1354 n.2 (9th Cir. 1996)).

As to the first subpart of the statute—whether Plaintiff has a "physical or mental impairment that substantially limits one or more . . . major life activities," 42 U.S.C. §

11

12102(1)(A)—Plaintiff alleges he "had been suffering a psychotic episode secondary to sleep deprivation over a two-week period," and that his mother informed Defendants he "suffered from mental illness." AC ¶¶ 10, 13.  Where, as here, a plaintiff alleges he is disabled within the meaning of the ADA, courts have generally required the plaintiff to plead the disability with some factual specificity.  *See O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1058 (9th Cir. 2007) (plaintiff adequately alleged that he was disabled where plaintiff pled that he suffered from mental illness including "brain damage, and organic personality disorder"); *Puckett v. Park Place Entm't Corp.*, 332 F. Supp. 2d 1349, 1353 (D. Nev. 2004) (Plaintiff's allegation that he suffered from multiple sclerosis "[c]learly . . . qualifies as a physical impairment for purposes of the ADA" and satisfies the disability inquiry in an ADA cause of action); *William S. v. Lassen Cty.*, 2006 WL 929398, at *3 (E.D. Cal. Apr. 11, 2006) (denying motion to dismiss ADA claim even though plaintiff failed to specifically allege how he was mentally or physically impaired, where another of plaintiff's claims specified that plaintiff was HIV positive).  Plaintiff offers no factual allegations to support his claim that he was disabled, such as the type or nature of mental illness from which he suffers.  Plaintiff's allegation that he has a "mental illness," without more, is a "formulaic recitation of the elements of a cause of action" under the ADA and does not satisfy his pleading obligations.  *See Twombly*, 550 U.S. at 555.  Plaintiff's additional allegation that he had been suffering a psychotic episode secondary to sleep deprivation is similarly insufficient.  *See Bresaz v. Cty. of Santa Clara*, ___ F. Supp. 3d ___, 2015 WL 5726470, at *8 (N.D. Cal., Sept. 30, 2015) (allegation of "delusional" beliefs with "manic" behavior and agitation, on a single day, did not constitute a "disability" under the ADA.); *Sanders,* 91 F. 3d at 1354 (temporary psychological impairment relating to plaintiff's cancer was not "of sufficient duration to fall within the protections of the ADA as a disability"); *Hosea v. Donley*, 584 Fed. App'x 608, 611 (9th Cir. 2014) (temporary inability to work based on acute work stress, without evidence of long-term or permanent impairment, did not constitute a "disability" under the ADA as applied to the Rehabilitation Act); *Swinnie v. Geren*, 379 Fed. App'x 665, 667 (9th Cir. 2010) (anxiety and depression which did not impair a major life activity failed to constitute a "disability" under the ADA.)

United States District Court
Northern District of California

1   Even assuming Plaintiff's allegations were sufficient, he has not alleged how his mental

2   illness "substantially limits one or more of the major life activities."  *See* 42 U.S.C. § 12102(1)(A).

3   Federal regulations define "substantially limits" as "[u]nable to perform a major life activity that

4   the average person in the general population can perform," or being "[s]ignificantly restricted as to

5   the condition, manner or duration under which an individual can perform a particular major life

6   activity" as compared to the average person.  *EEOC v. United Parcel Serv., Inc.*, 306 F.3d 794,

7   801 (9th Cir. 2002) (citing 29 C.F.R. § 1630.2(j)(1)(i)-(ii)).  Although "[t]he definition of

8   disability . . . shall be construed in favor of broad coverage of individuals . . . to the maximum

9   extent permitted by the terms of this chapter," 42 U.S.C. § 12102(4)(A), Plaintiff must still allege

10   plausible allegations showing his mental illness limits one or more major life activities.  Where, as

11   here, a plaintiff's allegations "do not illuminate the nature, severity, duration and impact of [the

12   plaintiff's] disability," such allegations are insufficient to "suggest that [the plaintiff] is

13   substantially impaired by [the] purported disability."  *Rodriguez v. John Muir Med. Ctr.*, 2010 WL

14   1002641, at *2 (N.D. Cal. Mar. 18, 2010) (dismissing with leave to amend allegation that plaintiff

15   "had a disability involving her back" which "impacted major life activities such as lifting,"

16   because even though "lifting" qualified as a major life activity under the ADA, plaintiff failed to

17   allege sufficient facts to imply she was "substantially impaired"); *United Parcel*, 306 F.3d at 801

18   (to determine if a disability "substantially limits one or more major life activities," courts should

19   look at whether the plaintiff is "[u]nable to perform a major life activity that the average person in

20   the general population can perform," or whether the plaintiff is "[s]ignificantly restricted as to the

21   condition, manner or duration under which an individual can perform a particular major life

22   activity" as compared to the average person); *Baker v. Roman Catholic Archdiocese of San Diego*,

23   at *4 (S.D. Cal. Dec. 17, 2014) (where a complaint "borrows from 42 U.S.C. § 12102(a)(2)(A) . . .

24   to allege that major life activities such as working, walking, and seeing were impacted by

25   disability, [the complaint] fail[s] to state a claim.").  In his Opposition, Plaintiff argues "[t]his

26   whole ordeal has affected his career in photography and design."  Opp'n at 4.  However,

27   allegations regarding his disability and its effect on his work appear nowhere in Plaintiff's AC.

28   As for the second subpart, Plaintiff fails to sufficiently allege he has "a record of" physical

13

1  or mental impairment that substantially limited one or more of his major life activities.  *See* 42

2  U.S.C. § 12102(1)(B).  To allege a record of physical or mental impairment, a plaintiff must allege

3  with at least some factual detail what the record of impairment is.  *See Thompson v. Davis*, 295

4  F.3d 890, 896 (9th Cir. 2002) (plaintiffs sufficiently alleged they had a "record" of physical or

5  mental impairment where plaintiffs alleged they were addicted to drugs in the past, that they have

6  been rehabilitated, and that they no longer use drugs).  Here, Plaintiff alleges only that he has a

7  "history" of mental illness.  AC ¶ 13.  However, "vague and conclusory allegations" are

8  insufficient to state a claim under the ADA.  *Ovitsky*, 2013 WL 4505832, at *3-4; *Twombly*, 550

9  U.S. at 555 (a "formulaic recitation of the elements of a cause of action" do not satisfy a plaintiff's

10  pleading obligations).  Plaintiff must allege, with at least some factual particularity, how he had a

11  "record" or "history" of physical or mental impairment within the meaning of the ADA.

12  *Thompson*, 295 F.3d at 896.

13       As to the third subpart, Plaintiff's reasonable accommodation claim cannot proceed as a

14  matter of law because, under 42 U.S.C. § 12201(h), "a public entity under subchapter II[5] . . . need

15  not provide a reasonable accommodation or a reasonable modification to policies, practices, or

16  procedures to an individual who meets the definition of disability in section 12102(1) of this title

17  solely under subparagraph (C) of such section."  Thus, Defendants would not have been obligated

18  to reasonably accommodate Plaintiff even if he was regarded as having suffered from a disability.

19  *See Bresaz*, 2015 WL 5726470, at *5 (sheriff's deputies were not obligated under the ADA to

20  provide subject of 911 call with reasonable accommodations).

21       Based on this analysis, the Court finds Plaintiff has failed to allege he suffers from a

22  specific, recognized mental disorder, or that he was ever medically diagnosed with having a

23  specific mental disorder, as defined by the ADA.  However, because Plaintiff could cure this

24  deficiency by including some factual specificity as to his claim, the Court shall grant Plaintiff

25  leave to amend his ADA claim.  *See Lopez*, 203 F.3d at 1130 (district court should give leave to

26

27  _____

28  [5] *See Van Hulle v. Pac. Telesis Corp.*, 124 F. Supp. 2d 642, 643 n.2 (N.D. Cal. 2000) ("The ADA initially was enacted as Public Law 101-336 and was organized into Titles I through V.  When the ADA was codified as 42 U.S.C. § 12101, et seq., the 'Titles' were re-labeled as 'Subchapters'").

1    amend if the pleading can be cured by the allegation of other facts).

2           2.      Whether the ADA Applies to Individual Defendants

3           Defendants also argue Plaintiff's claim must be dismissed because the ADA does not apply

4    to individual defendants.  Mot. at 6.  The ADA defines "public entity" in relevant part as "any

5    State or local government" or "any department, agency, special purpose district, or other

6    instrumentality of a State or States or local government."  42 U.S.C. § 12131(1)(A)-(B)).  Public

7    entity, "as it is defined within the statute, does not include individuals." *Alsbrook v. City of*

8    *Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999)).  "In suits under Title II of the ADA . . . the

9    proper defendant usually is an organization rather than a natural person. . . .  Thus, as a rule, there

10   is no personal liability under Title II." *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002)

11   ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her

12   individual capacity to vindicate rights created by Title II of the ADA"); *Walker v. Snyder*, 213

13   F.3d 344, 346 (7th Cir. 2000); *Miller v. King*, 384 F.3d 1248, 1276-77 (11th Cir. 2004).

14   "Individual liability is precluded under Title II of the Americans with Disabilities Act, and

15   Plaintiff may not pursue his ADA claim against the individual defendants named." *King v.*

16   *Hubbard*, 2009 WL 4052721, at *7 (E.D. Cal. Nov. 19, 2009); *Thomas v. Nakatani*, 128 F. Supp.

17   2d 684, 691 (D. Haw. 2000).

18          Plaintiff appears to concede he cannot pursue his ADA claim against the officers in their

19   individual capacity, but he seeks leave to allege his ADA claim against Defendants in their official

20   capacities.  Opp'n at 6.  "Plaintiff may name the appropriate entity or state officials in their official

21   capacities." *Hawkins v. Diaz*, 2015 WL 6689525, at *3 (E.D. Cal. Oct. 28, 2015).  However,

22   claims against state officials in their official capacities are construed as claims against the state.

23   *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Miranda B.V. Kitzhaber*, 328 F.3d 1181,

24   1187-88 (9th Cir. 2003); *Garcia v. SUNY Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir.

25   2001).  Plaintiff's AC names the CHP and its individual officers as Defendants, and it is not clear

26   whether he brings his ADA claim against the CHP, the individual officers, or both.  As the CHP is

27   a public entity, any claims against its individual officers in their official capacities would be

28   redundant.

United States District Court
Northern District of California

15

1        3.       <u>Whether Defendants are Entitled to Qualified Immunity</u>

Finally, Defendants argue they are protected from suit for ADA violations under the doctrine of qualified immunity. Mot. at 7. However, as the Court has dismissed Plaintiff's ADA claim with leave to amend, his allegations are not settled and it is not clear whether he intends to proceed against the CHP or the individual officers. Accordingly, the Court need not address the individual officers' qualified immunity at this time.

       4.       <u>Summary</u>

Because Plaintiff has failed to allege he suffers from a specific, recognized mental disorder, or that he was ever medically diagnosed with having a specific mental disorder, as defined by the ADA, his ADA claim must be dismissed. However, because Plaintiff could cure this deficiency by including some factual specificity as to his claim, the Court shall grant Plaintiff leave to amend his ADA claim, so long as it is brought against the proper "public entity."

**CONCLUSION**

Based on the analysis above, the Court **DENIES** Defendants' Motion to Dismiss as to Plaintiff's excessive force claim, but **GRANTS** Defendants' Motion as to Plaintiff's ADA claim **WITH LEAVE TO AMEND**. If Plaintiff chooses to file a second amended complaint, he must do so by January 6, 2016.

**IT IS SO ORDERED.**

Dated: December 16, 2015

_____

MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California

16